IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-02387-RBJ

VERONICA A. TREVIZO,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

ORDER

---

This matter is before the Court on review of the Commissioner's decision denying plaintiff Veronica A. Trevizo's application for Disability Insurance Benefits pursuant to Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on March 20, 2012. The Court apologizes to the parties for the delay in resolving the case.

**Facts**

At the time Ms. Trevizo filed for disability insurance benefits she was a twenty-four year old mother of two who had never worked and still lived with her mother. Ms. Trevizo left school in ninth grade and did not complete her GED. In June 2009 Ms. Trevizo was diagnosed with Multiple Sclerosis (MS), and following that diagnosis, she filed for Social Security disability insurance benefits in October 2009 alleging disability due to MS and illiteracy. A hearing was held in November 2010. The ALJ determined that Ms. Trevizo suffered from two severe impairments: multiple sclerosis and a learning disorder.

<u>Multiple Sclerosis</u>

In June 2009 Ms. Trevizo was admitted to the emergency room with sudden onset facial numbness. Ms. Trevizo also suffered from tingling and numbness in her lower extremities and loss of balance. R. 231. After completing several examinations, doctors determined that Ms. Trevizo suffered from MS. Unfortunately, the record is fairly sparse regarding details of Ms. Trevizo's symptoms and treatment of her MS. There are notes from the emergency room when she was admitted to the hospital in the summer of 2009, and a few notes from a neurologist, Dr. Gamuac, from early 2010. On February 18, 2010 Dr. Gamuac noted that Ms. Trevizo was not in acute distress, was alert, oriented, and her memory was intact. R. 232. He also included in his impressions that she was clinically stable but suffered from chronic pain and short-term memory loss. *Id.* Similarly, on March 16, 2010 Dr. Gamuac found Ms. Trevizo to be clinically stable but suffering from chronic pain. *Id.* Dr. Gamuac also completed a form describing Ms. Trevizo's restrictions. R. 286-88. On this form, Dr. Gamuac opined that Ms. Trevizo could lift/carry less than 10 pounds occasionally, could sit for less than one hour at a time and 2-3 hours in an eight hour work day, could stand for less than one hour at a time and 2-3 hours in an eight hour workday, and would need to lie down 3-4 times per day for 15 to 20 minutes. *Id.*

At the hearing, Ms. Trevizo testified that she had trouble with fatigue, sitting, standing, and walking. R. 33. Ms. Trevizo explained that she could sit for about 30 minutes, stand for about 20 minutes, and lift about 5 pounds. R. 34. She explained that she goes to her children's school to volunteer once every week or two and takes walks around the block in the summer. R. 37. Ms. Trevizo also said that she had to lay down multiple times a day, because she would get light-headed or dizzy. R. 43. At the time of the hearing, Ms. Trevizo said that Dr. Gamuac was her primary doctor for her MS, and that she had been seeing him for 8-9 months. R. 39.

<u>Learning Disability</u>

Ms. Trevizo testified that she does not have a treating physician or psychologist for her learning disability. R.39. Instead, two consultative exams were performed. Brett Valette, Ph.D. performed a consultative psychological examination on Ms. Trevizo in December 2009. He found that her affect was appropriate, her organization and character of speech were clear, her thought process was clear, but that she had very poor verbal skills. R. 219. Dr. Valette measured Ms. Trevizo's performance on the Wechsler Adult Intelligence Scale and found that she fell in the low end of the low average range of intellectual abilities. R. 219-20. Ms. Trevizo had difficulties with verbal comprehension and working memory and her lowest score was in abstract thinking. R. 220. Dr. Valette opined that Ms. Trevizo suffered from a major learning disability, and that she was illiterate. *Id.* He assigned her a Global Assessment of Functioning (GAF) score of 65.

Jose Vega, Ph. D. examined Ms. Trevizo in October 2010. Dr. Vega opined that Ms. Trevizo functions within the borderline to low average range of intelligence and also has a learning disability. R. 282. After administering a Mini Mental Status Examination, Dr. Vega explained that Ms. Trevizo's neurocognitive functioning was impaired. R. 281. He found that she was able to follow a single step command but would have trouble following multi-step commands. He found that her GAF score was 50-55 and she had marked to extreme limitations in functioning. R. 283.

James Wanstrath, Ph. D., a state agency psychological consultant also assessed Ms. Trevizo's learning disability. He opined that her learning disability caused no restriction in daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration. R. 59-60.

At the hearing, Ms. Trevizo testified that she had trouble reading and writing. R. 32. She said that she could sign her name and read little words, but that she was unable to read a newspaper or write a grocery list. *Id.* She explained that her seven year old now reads better than she does. R. 45. Ms. Trevizo said that she could add and subtract numbers but could not multiply or divide. R. 42-43. Finally, Ms. Trevizo testified that she forgets a lot of things and struggles to stay in conversations because she forgets what was said. R. 45.

Administrative Law Judge's Opinion

In her opinion, administrative law judge Kathryn D. Burgchardt applied the five step analysis mandated by social security regulations to determine whether Ms. Trevizo is disabled. At the first step she determined that Ms. Trevizo was not engaged in substantial gainful activity since the date of Ms. Trevizo's disability benefits application. At the second step the ALJ determined that Ms. Trevizo suffered from two severe impairments: multiple sclerosis and a learning disorder. At the third step the ALJ determined that Ms. Trevizo did not have an impairment or combination of impairments that met or medically equaled those listed in 20 CFR Part 404, Subpart P, Appendix 1.

Before going on to the fourth step, the ALJ assessed Ms. Trevizo's residual functional capacity (RFC). The ALJ found that Ms. Trevizo could perform simple unskilled work with the following additional limitations: lift or carry up to 10 pounds frequently and 20 pounds occasionally, stand or walk with normal breaks for a total of 6 hours in an 8 hour workday, and sit with normal breaks for a total of 6 hours in an 8 hour workday. The ALJ also found that the Ms. Trevizo should avoid unprotected heights, moving machinery, extreme heat, wetness, and humidity. The ALJ also found that Ms. Trevizo is limited to only simple reading, writing, and math. R. 17.

In arriving at this RFC, the ALJ considered the record as a whole as well as Ms. Trevizo's testimony. The ALJ determined that Ms. Trevizo's impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning "the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R. 18. The ALJ explained that "Dr. Gamuac has concluded that the claimant is limited to less than sedentary work, but this is not given great weight because it is inconsistent with his treatment notes which show her condition is compatible with the ability to work. Overall, the evidence shows the claimant is capable of performing light work as set forth above." *Id.*

When examining the restrictions caused by Ms. Trevizo's learning disability, the ALJ did not give Dr. Vega's conclusions great weight, because she determined that they were not consistent with the evidence including his written narrative and GAF of 50-55. R. 19. The ALJ gave "more" weight to Dr. Valette's findings. *Id.* The ALJ also gave substantial weight to Dr. Wanstrath's assessment, because it was consistent with the record as a whole. *Id.*

After completing the RFC, step four required the ALJ to determine if, based on the restrictions in the RFC, Ms. Trevizo would be able to perform past relevant work. The ALJ determined that Ms. Trevizo had no past relevant work. R. 19. Therefore, the analysis went to step five which required the ALJ to determine whether there are jobs that exist in significant numbers that Ms. Trevizo could perform based upon her age, education, work experience, and residual functional capacity. Based upon the vocational expert's testimony, the ALJ determined that substantial work existed that Ms. Trevizo was capable of performing. R. 20-21.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Conclusions**

Ms. Trevizo appeals the ALJ's finding of no disability on four grounds: (1) in assessing Ms. Trevizo's RFC, the ALJ improperly imposed her own opinion of Ms. Trevizo's physical impairments over the opinions of experts; (2) the physical restrictions in the RFC are not supported by evidence in the record; (3) the ALJ did not properly weigh the conflicting medical opinions as to Ms. Trevizo's learning disability; and (4) the ALJ gave significant weight to Dr. Wanstrath's opinion but did not follow his restrictions. Ms. Trevizo also requests that this Court award benefits rather than remand back to the ALJ.

<u>Restrictions Based on Physical Impairments</u>

The record was rather sparse concerning Ms. Trevizo's physical impairments caused by her MS. It included notes from when she was admitted to the hospital in the summer of 2009, a few treatment notes from Dr. Gamuac from early 2010, and a worksheet with restrictions completed by Dr. Gamuac.

As the doctor who had been treating Ms. Trevizo for 8-9 months at the time of her hearing, Dr. Gamuac was Ms. Trevizo's treating physician. Treating physicians' opinions are generally given controlling weight. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

Despite this standard, the ALJ determined that Dr. Gamuac's opinion should not be "given great weight because it is inconsistent with his treating notes which show her condition is compatible with the ability to work." R. 18. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Further, the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

Looking at Dr. Gamuac's treatment notes, there is not substantial evidence to support the ALJ's determination that Dr. Gamuac's opinion about Ms. Trevizo's work restrictions are inconsistent with his treatment notes. His treatment notes say that she is "stable" and not in "acute distress" but they also say that she suffers from "chronic pain." R. 232. In determining that these descriptors are "compatible with the ability to work" in direct contradiction to the restrictions described by Dr. Gamuac, the ALJ improperly substituted her lay opinion for the opinion of a treating physician. *Lax v. Astrue,* 489 F.3d 1080, 1089 (10th Cir. 2007).

Further, there are no other medical opinions or other evidence in the record to support the ALJ's conclusions about Ms. Trevizo's RFC, including that she can stand for six hours in an eight hour work day, sit for six hours in an eight hour work day, and does not need to lie down at all during a work day. "The ALJ must make specific findings as to RFC, and these findings must be supported by substantial evidence." *Adkins v. Barnhart,* 80 Fed. App'x 44, 48 (10th Cir. 2003). An ALJ is required to "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* Upon determining that Dr. Gamuac's opinion was not entitled to controlling weight, the ALJ had an obligation to develop the record. "Finding no substantial evidence upon which to base an RFC finding, the ALJ should have recontacted the claimant's physicians. If additional records do not exist or are insufficient to clarify the inconclusive evidence already in the record, then the ALJ should order a consultative examination." *Id.* (citations omitted). On remand, the ALJ needs to develop the record so that substantial evidence exists to support Ms. Trevizo's RFC.

<u>Restrictions Based on Learning Disability</u>

In his opinion, Dr. Vega concluded that Ms. Trevizo has marked to extreme limitations in functioning. R. 283. However, the ALJ did not give "great weight" to Dr. Vega's opinion because it was "inconsistent with the evidence including his own written narrative and GAF score of 50-55." R. 19. Ms. Trevizo argues that the ALJ was not qualified to assess whether Dr. Vega's opinion was consistent with a GAF of 50-55. I agree. "[A]n ALJ cannot substitute her lay opinion for that of a medical professional." *Lax v. Astrue,* 489 F.3d 1080, 1089 (10th Cir. 2007). An ALJ is not qualified to interpret test data in contradiction of a medical professional's own interpretation. *See id.* If the ALJ is not confident that Dr. Vega's assessment that Ms. Trevizo suffers from marked to extreme limitations in functioning is consistent with the GAF

8

score of 50-55, the ALJ needs to either contact Dr. Vega to clarify or seek an expert opinion. *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) (holding ALJ had an obligation to recontact treating physician if validity of his report was in question).

Ms. Trevizo also challenges the ALJ's reliance on Dr. Wanstrath's opinion. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). As a non-examining, consulting medical opinion, Dr. Wanstrath's opinion was entitled to less weight than the opinions of treating physicians or examining physicians. *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004). Although a non-treating medical source's opinion is typically accorded less weight than treating source opinions, an ALJ can still consider these opinions. 20 C.F.R. § 416.927(e). If the ALJ does accord the consultant's opinion weight, it is important that the ALJ evaluate the findings using factors including the consultant's medical specialty and expertise, supporting evidence in the case record, supporting explanations the consultant provides, and any other factors relevant for weighing opinions. 20 C.F.R. § 416.927(e)(2)(ii).

In her opinion, the ALJ found that Dr. Wanstrath's opinion should be accorded "substantial weight" because "he is an acceptable medical source and his conclusion is consistent with the record as a whole." R. 19. This is a lot of weight to give Dr. Wanstrath's opinion compared to the weight she gave the two examining sources. The ALJ gave Dr. Vega's opinion "little weight," and she did not specify how much weight she gave Dr. Valette's opinion, only that it was accorded "more weight" than Dr. Vega's opinion. *Id.* This is not enough information to understand the weight given or the reasons for those weights. On remand, if the ALJ again determines that it is appropriate to assign Dr. Wanstrath's opinion substantial weight, she needs to first clarify what weight she assigned to Dr. Valette's opinion, and then explain how the factors listed above support assigning so much weight to Dr. Wanstrath's opinion.

<u>Remand</u>

Ms. Trevizo argued that instead of remanding her case back to the ALJ, that this Court should award benefits. "Outright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose." *Dollar v. Bowen,* 821 F.2d 530, 534 (10th Cir. 1987). At this point, there are numerous gaps in the record that require filling before an award of benefits is appropriate. Therefore, the better course is to remand this case back to the ALJ for additional fact finding and explanation consistent with this opinion.

**Order**

The decision of the ALJ is reversed. The case is remanded to the Commissioner for proceedings consistent with this order, namely that she develop a sufficient record on which to assess Ms. Trevizo's RFC.

DATED this 11th day of March, 2013.

BY THE COURT:

*/s/ Brooke Jackson*

R. Brooke Jackson
United States District Judge